SCOTT ERIK ASPHAUG, OSB # 833674
United States Attorney
District of Oregon
**SCOTT M. KERIN, OSB # 965128**
Assistant United States Attorney
Scott.Kerin@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 3:22-cr-00099-MO |
| v. | **GOVERNMENT'S MOTION FOR AND MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION** |
| **TYLER RAY HARNDEN,** | |
| **Defendant.** | |

The United States of America, through Scott Erik Asphaug, United States Attorney for the District of Oregon, and Scott M. Kerin, Assistant United States Attorney, hereby asks the Court to detain the defendant pending trial as both a risk of non-appearance and as a danger to the community.

A.    **Factual and Procedural Summary.**

On February 16, 2022, federal agents with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) and detectives with both the Salem Police Department's Criminal Investigations Section and Strategic Investigations Unit (Salem Police) executed a federal search

warrant on the defendant's residence in Salem, Oregon. The defendant was arrested just prior to the warrant being executed on an outstanding state post-prison supervision warrant, a failure to appear warrant on a delivery of heroin and delivery of methamphetamine case, and probable cause based upon the federal crimes he had committed. The search warrant, which was the result of a joint ATF and Salem Police investigation, was based upon probable cause that the defendant's residence contained evidence related to his distribution of counterfeit oxycontin pills manufactured with fentanyl and his illegal possession, manufacture, and sale of firearms. At the time, the defendant was living in the basement of the residence and his mother lived on the first floor.

During the search law enforcement agents found and seized the following items from the basement, where the defendant was living:

- A Glock, model 42, .380 caliber pistol with serial number AFZX899; and,
- A Canik, model TP9 SF, 9mm caliber pistol with serial number 20AT35004.

The Canik and Glock pistols were both located inside a safe in defendant's bedroom. The safe was located next to defendant's bed. Inside the basement agents also discovered evidence that indicated that the defendant was manufacturing and selling firearms ("ghost guns"). Inside the basement agents found:

- Three (3) completed Privately Made Firearm (PMF) rifles, commonly referred to as "Ghost Guns";
- Thousands of rounds of various ammunition;
- Thirteen (13) lower receivers for rifles in various stages of completion;
- Two (2) pistol frames;

///

**Government's Motion for Pretrial Detention**            **Page 2**

- Approximately 15 high-capacity magazines for various calibers of ammunition, some of which were already loaded;
- Three (3) drill presses and an assortment of firearm manufacturing equipment; and; and
- Approximately 200 counterfeit blue M30 oxycontin pills, believed to be manufactured with fentanyl, and approximately 45 grams of suspected heroin.

When the defendant was arrested he was in possession of approximately 100 counterfeit oxycontin pills, believed to be manufactured with fentanyl, and a phone. On the defendant's phone agents found multiple text messages indicating that the defendant was selling both counterfeit M30 oxycodone pills, manufactured with fentanyl, as well as heroin. The defendant, a previously convicted felon, was prohibited from processing firearms.

Based upon witness information and what they found within defendant's residence, Agents learned that the defendant was illegally purchasing, as well as manufacturing and selling firearms. ATF agents believe this is the largest "ghost gun" manufacturing operation they have found in Oregon. Several pictures displaying items seized from the residence are pictured below.

///

///

///





On February 18, 2022, Honorable John V. Acosta authorized a criminal complaint and arrest warrant for the defendant for the crime of being a felon in possession of a firearm. After his arrest, the defendant was held in Marion County Jail on a state post-prison sanction based upon his prior felony conviction for unlawful Delivery of Heroin.

///

**Government's Motion for Pretrial Detention**  Page 4

Case 3:22-cr-00099-MO    Document 3    Filed 03/17/22    Page 5 of 14

Following his initial arrest, agents discovered additional evidence that the defendant had been paying people to conduct "straw purchases" of guns for him, including the Canik and Glock pistols mentioned above. The defendant was having drugs addicts buy guns for him, since he was prohibited from purchasing guns, and in exchange the defendant would pay them with counterfeit M30 oxycodone pills manufactured with fentanyl. Agents have associated over 50 such "straw purchases" of firearms to the defendant. Agents also learned, through a witness, text messages, and recorded jail calls that the defendant had a relative storing more of his firearms and that he was trying to get her to sell some of them to generate money to put into his jail account.

On March 15, 2022, ATF agents and Salem Police detectives obtained and executed a federal search warrant on the relative's house. Inside they found four gun safes containing 63 additional firearms belonging to the defendant, to include pistols, rifles, shotguns, and milled out rifle lowers (used to manufacture firearms), depicted below.

///

///

///

**Government's Motion for Pretrial Detention**                                                                 **Page 5**



On March 16, 2022, the defendant was indicted for Distribution of Fentanyl (two counts), in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C); Possession with the Intent to Distribute Fentanyl, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C); Possession with the Intent to Distribute Heroin, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C); Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c); and, Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1).

On the drug charges the defendant is facing up to twenty years imprisonment, and a three year term of supervised release. On the Possession of a Firearm in Furtherance of a Drug Trafficking Crime count, the defendant is facing up to Life imprisonment, a mandatory minimum of five years imprisonment, and a three year term of supervised release. On the Felon in Possession charge, the defendant is facing up to 10 years' imprisonment, and a three year term of supervised release.

**Government's Motion for Pretrial Detention** <span style="float:right">**Page 6**</span>

The government seeks the defendant's detention pending trial because his drug trafficking and illegal firearms possession poses a substantial danger to the community and he presents an unacceptable risk of nonappearance at future court proceedings. The defendant's felony charges Distribution of Fentanyl, Possession with the Intent to Distribute Fentanyl, Possession with the Intent to Distribute Heroin, and Possession of a Firearm in Furtherance of a Drug Trafficking Crime all create a presumption of pretrial detention.

B.    Applicable Law.

   1.    **Rules of Evidence Do Not Apply at Detention Hearing**

The Federal Rules of Evidence do not apply in pretrial detention proceedings. Fed. R. Evid. 1101(d)(3); 18 U.S.C. § 3142(f). Accordingly, both the government and the defense may present evidence by proffer or hearsay. *United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986); *see also United States v. Bibbs*, 488 F.Supp.2d 925, 925-26 (N.D.Cal. 2007).

   2.    **Rebuttable Presumption of Detention**

Under the Bail Reform Act, 18 U.S.C. § 3142, *et seq.*, which governs the detention of a defendant pending trial, the Court shall order a defendant detained if, after a hearing, it finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." Generally, the United States bears the burden of establishing danger to the community by clear and convincing evidence; risk of flight need only be proved by a preponderance of the evidence. *United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990); *Winsor*, 785 F.2d at 757.

Where there is probable cause to believe that the defendant committed a Title 21 narcotics offense and the maximum penalty for that offense is a term of imprisonment of 10 years or more, or a violation of 18 U.S.C. § 924(c), the law creates a presumption that no

condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(3). In such a case, the burden of proof shifts to the defendant to rebut the presumption of detention. *United States v. Carbone*, 793 F.2d 559, 560 (3rd Cir. 1986). The defendant's drug charges and his 924(c) charge create a presumption of detention in this case.

Concern about the safety of the community is not limited to concerns about violence; rather it is the *risk* that a defendant will continue committing crimes while on release, such as drug dealing, that warrants their continued detention as a danger to the community:

> [T]he language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concerns about safety be given a broader construction than merely danger of harm involving physical violence. This principal was recently endorsed in *United States v. Provenzano and Andretta*, in which it was held that the concept of 'danger' . . . extended to nonphysical harms such as corrupting a union. **The committee also emphasizes that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the "safety of any other person or the community."**

S. REP. NO. 98-225, 98th Cong., 1st Sess. (1983), *reprinted in* 1984 U.S.C.C.A.N 3182, 3195 (Bail Reform Act)(emphasis added); *see also United States v. Hare*, 873 F.2d 796, 798-99 (5th Cir.1989)(Congress has determined "that drug offenders pose a special risk of flight and dangerousness to society.").

The Senate Report further explained *why* they created the presumption that there was no condition or combination of conditions of release that will reasonably assure the appearance of drug dealers or the safety of the community:

> These [the crimes outlined in 18 U.S.C. § 3142(e)] are serious and dangerous federal offenses. The drug offenses involve either trafficking in opiates or narcotic drugs, or trafficking in large amounts of other types of controlled substances. It is well known that drug trafficking is carried on to an unusual degree by persons engaged in continuing patterns of criminal activity. **Persons charged with major drug felonies are often in the business of importing or distributing dangerous drugs, and**

> **thus, because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism.**

S.Rep. No. 98-225, 98th Cong., 1st Sess. (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3203 (Bail Reform Act) (emphasis added).

The presumption in favor of detention, as both a flight risk and danger to the community, does not vanish if a defendant comes forward with some evidence to rebut it, but rather it remains an evidentiary factor to be evaluated. *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir.1985); *see also United States v. Rueben*, 974 F.2d 580, 586 (5th Cir.1992); *United States v. Rodriguez*, 950 F.2d 85, 88 (2nd Cir.1991); *United States v. Hare*, 873 F.2d 796, 798 (5th Cir.1989). Were the presumption to vanish, "courts would be giving too little deference to Congress' findings regarding this class." *United States v. Martir*, 782 F.2d 1141, 1144 (2nd Cir.1986).

The degree of danger posed by a defendant charged with narcotics trafficking is critical. *United States v. Leon*, 766 F.2d 77, 81 (2nd Cir. 1985). To determine that degree of danger and decide if a defendant should be detained pending trial, a judicial officer must look to the nature and circumstances of the crime charged; whether the crime involved violence or drugs; the personal history of the person, the seriousness of the danger posed by the person's release; and, the evidence of the individual's guilt. *Id*. Evidence of defendant's family ties in the area, residence in the community and employment history should have no bearing on the court's determination of dangerousness and cannot rebut the presumption that arises under the statute. *See* S. Rep. No. 225, 98th Cong., 1st Sess. 24 (1983) (minimizing community ties and pointing to the "growing evidence that the presence of this factor does not necessarily reflect a likelihood of appearance, and has no correlation with the question of the safety of the community.").

///

**Government's Motion for Pretrial Detention**                                                                                  **Page 9**

If the defendant proffers evidence to initially rebut the presumption of dangerousness or risk of non-appearance, the Court should then examine the following four factors in deciding whether release is appropriate:

(1) the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance . . . ;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including –

   (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearances at court proceedings; and

   (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal . . . ; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

18 U.S.C. § 3142(g).

## C.  Factors Supporting Detention.

The defendant should be detained pending trial as both a danger to the community and a risk of nonappearance. Based upon the nature of the charges alone the defendant should be detained pending trial. This defendant was a drug dealer who used and preyed upon other peoples' addictions so they would buy him guns, guns he was prohibited from having. In addition to being an armed drug dealer, the defendant was also manufacturing and selling firearms. We know of at least two instances where the defendant sold firearms to other significant drug dealers who were working with international drug trafficking organizations. One of those guns was found at the scene of a fatal shooting in which the drug dealer fired on

law enforcement officials executing a warrant and was subsequently killed. Drug dealers possessing firearms is a dangerous and deadly combination. Additionally, after he was arrested and the investigation was continuing, the defendant continued his criminal activity by trying to get a relative to sell some of his firearms. Given the nature of the charges and the defendant's background, it would be unrealistic to hope he will, at this point, suddenly see the error of his ways and follow any of the Court's future orders. He should be detained pending trial.

1. **Nature and Circumstances of the Offense.**

The defendant was an armed drug dealer – a dealer spreading drugs and guns throughout the community. When Congress created the presumption of pretrial detention in these types of drug cases and 924(c) cases they voiced their collective concern that large scale drug dealers, if released from custody, would simply take it as an opportunity to reengage in their illegal activities and pose a danger to the public. Fentanyl and heroin are both extremely destructive and deadly and this defendant was using drugs to prey upon other peoples' addictions to have them buy firearms for him that he was not allowed to possess.

2. **Weight of the Evidence.**

The weight of the evidence against the defendant is extremely strong and supports his continued detention. The defendant was caught with fentanyl and heroin and the text messages on his phone clearly show that he was dealing these drugs. The defendant was also caught with with firearms – both in his residence and the ones he was storing at a relative's residence. Based upon witness testimony, seized evidence, and recorded jail calls, the evidence against the defendant is extremely strong.

///

///

3.      **History and Characteristics of the Defendant.**

The history and characteristics of the defendant also warrants pretrial detention. The defendant is a convicted felon who committed these current crimes while on state post-prison supervision and while he had pending warrants for his arrest. At the time he was arrested the defendant had outstanding warrants for failure to appear on a state matter and for violating his post-prison supervision. While the defendant has ties to Salem, Oregon that is no way indicates he will abide by the law or any of a Court's release conditions – it certainly did not ensure he followed the law or made his court appearances in the past. If the defendant failed to abide by state post-prison supervision it is unrealistic to think he would somehow be more willing to follow federal pretrial supervision. The house he was living in with his mother, as opposed to a place of stability, was the focal point of where he conducted his illegal activity. Agents also found a firearm in his mother's room that was bought by the defendant through a "straw purchaser." There is also no indication that the defendant has legitimate job – he was simply an illegal drug and gun dealer. Finally, the defendant is now suddenly facing extremely serious federal charges - charges he has talked about on jail calls - which creates every incentive for him to try and flee to avoid the consequences of his crime. He should be detained.

4.      **Nature and Seriousness of the Danger to the Community.**

The defendant's drug dealing crimes are extremely serious – fentanyl dealers are merchants of death and destruction. Given the presumption of detention that comes along with the charges, Congress has recognized the very serious risk that drug dealers pose to the community and their risk of going back to drug dealing even while on pretrial release. To release this defendant poses an unacceptable risk to the people in the community. Drug dealing itself poses a significant risk to the community – drugs such as counterfeit pills made with

fentanyl and heroin are killing huge numbers of our fellow citizen – deaths that are being fed by dealers like the defendant. With this defendant the risks are dramatically increased because he was also an armed drug dealer – and armed drug dealer who was also making and selling firearms to others. The defendant's illegal criminal activities are an extremely combustible mixture that places the community in danger. The community is far safer now that the defendant has been arrested and he should be detained pending trial.

## Conclusion

For the reasons set forth herein, we respectfully request that the Court to detain the defendant pending trial and find he poses an unacceptable risk of non-appearance at future court hearings and that he would pose an unacceptable danger to the community if released. We ask the Court to find that:

- The Title 21 and 924(c) offenses charged create a rebuttable presumption in 18 U.S.C. § 3142(e) that no combination of conditions will (1) reasonable assure the safety of the community and (2) reasonably assure the appearance of the defendants as required.

- The defendant has not rebutted, by sufficient evidence to the contrary, the presumption of detention provided in 18 U.S.C. 3142(e).

- Furthermore, due to the nature of the offense and the extreme dangers posed by the defendant's illegal distribution of drugs and illegal possession of firearms in furtherance of his drug trafficking activities, that there is no condition or combination of conditions that will reasonably assure the safety of other persons and the community if the defendants are released.

///

///

///

- Due to the weight of the evidence and the defendant's personal history and characteristics, including the potential penalties they are facing on the current charges, no condition or combination of conditions will reasonably assure the appearance of the defendants at future court hearings as required if released from custody.

Dated: March 17, 2022.                    Respectfully submitted,

                                                             SCOTT ERIK ASPHAUG
                                                             United States Attorney

                                                             /s/ *Scott Kerin*
                                                             SCOTT M. KERIN, OSB # 965128
                                                             Assistant United States Attorney